UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.16-20579-CR-MORENO

UNITED STATES OF AMERICA,

v.

KARLA DOMINGUEZ,

      *Defendant.*

_____/

## MOTION FOR DOWNWARD DEPARTURE/VARIANCE AND SUPPORTING MEMORANDUM OF LAW

      COMES NOW the Defendant, Karla Dominguez, by and through undersigned counsel, and pursuant to Title 18 United States Code § 3553(a) (2017), and respectfully files this Motion for Downward Departure/Variance and Supporting Memorandum of Law, based on the following:

      1.    On November 22, 2016, the Defendant pled guilty pursuant a negotiated resolution to one (1) count of Conspiracy to Commit Access Device Fraud, 18 U.S.C. § 1029(b)(2), and one (1) count of Trafficking in Counterfeit Access Devices, 18 U.S.C. § 1029(a)(1).

      2.    The Government and the defense have agreed that the loss attributable to Dominguez's relevant conduct is greater than $40,000, but less than $95,000. The PSI report attributes the loss amount for the entire conspiracy, $168,486.26, to Dominguez.

      3.    The Defendant will be sentenced on January 24, 2017 at 10:00 a.m.

## MEMORANDUM OF LAW

The Sentencing Reform Act requires a sentencing court to consider the relevant Sentencing Guidelines range. *See* 18 U.S.C. § 3553(a) (2017). However, courts are also required to tailor sentences in light of other statutory sentencing concerns. *United States v. Booker*, 125 S. Ct. 738, 757, 764-765 (2005). Thus, under *Booker*, sentencing courts must consider and apply the sentencing guidelines as just one of several factors set forth in 18 U.S.C. § 3553(a).

The primary directive expressed within § 3553(a) requires the courts to impose sentences that are sufficient, but not greater than necessary. To accomplish this objective, courts are directed to consider factors enumerated within subsection § 3553(a)(2). These sentencing factors include:

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

    1) The nature and circumstances of the offense and the history and characteristics of the defendant § 3553(a)(1);

    2) The kinds of sentences available § 3553(a)(3);

    3) The need to avoid unwarranted sentence disparities among defendants § 3553(6); and

    4) The need to provide restitution to any victims of the offense. § 3553(a)(7).

In analyzing what an appropriate sentence should be, 18 U.S.C. § 3582 (2017) directs sentencing courts to determine whether and to what extent imprisonment is appropriate based on the above referenced § 3553(a) factors.

In addition, 18 U.S.C. § 3661 (2017) provides that *no limitation* shall be placed on the information concerning the background, character, and conduct of the defendant which a court may receive and consider for the purpose of imposing an appropriate sentence. (emphasis added)

It is clear that, pursuant to the directives of *Booker* and § 3553(a), courts must consider all the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. The defense asserts that where the sentencing guidelines conflict with other sentencing factors set forth in § 3553(a), the statutory sentencing factors should generally trump the guidelines. See *United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that because § 3553(a) requires sentences to be no greater than necessary to meet the purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates the statute and is reversible, even if within guideline range).

## Karla Dominguez: Sentencing Factors

In accord with 18 U.S.C. § 3553(a), the defense respectfully requests that this court consider the following factors for purposes of sentencing:

### 1. Nature/Circumstances of the Offense and the History and Characteristics of the Offender:

#### (a) Nature and Circumstances of Offense

The Defendant pled Guilty to one (1) count of Conspiracy to Commit Access Device Fraud, 18 U.S.C. § 1029(b)(2), and one (1) count of Trafficking in Counterfeit Access Devices, 18 U.S.C. § 1029(a)(1). Both are Class C felonies.

The crimes in question were neither violent nor drug related.

The Defendant has had no prior contacts with the criminal justice system.

The relevant offense conduct involves the Defendant's possession and use of fraudulent credit cards to purchase Apple products at two (2) Apple retail stores. On or about nine (9) occasions between December 2014 and April 29, 2015 the Defendant made such purchases.  The Defendant played no role in the collection of personal identification information, the making of fraudulent cards, or soliciting people for purposes of the conspiracy.  The Defendant's knowledge relating to the conspiracy was limited.  Rudolfo Martinez a.k.a. Ramon Concepcion (hereinafter Martinez), the undisputed ringleader of the conspiracy, was not truthful or complete in his communications with the Defendant in relation to the nature or scope of the conspiracy.

The charged conspiracy included Martinez, with whom the Defendant had a romantic relationship, as well as two (2) or more Apple store clerks, four (4) other named "mules" who purchased Apple gift cards and products, and "many" other unidentified individuals.

4

The guidelines sentencing range is impacted greatly by the amount of loss attributed to the alleged conspiracy.  The defense asserts that the attributable range of $40,000 to $95,000 should apply. The Defendant, however, did not personally receive a financial benefit that is remotely close to either amount.  Further, the Defendant did not have knowledge or participate in a very large percentage of the broader conspiracy.

In this case, upon the arrest of Martinez, Defendant Dominguez immediately authorized a search of their apartment and agreed to the seizure of any evidence found. She has cooperated with law enforcement and the Government from the moment she encountered them at the time of Martinez's arrest.

### (b) History and Characteristics of Karla Dominguez

The Defendant, now nearly 25 (DOB: 1/25/1992), was 22-23 years of age when she committed the acts charged herein.  She does not have any addictions to drugs or alcohol. She has never engaged in any violent criminal conduct. She has complied with all court-ordered conditions of release.

Her natural father and mother separated soon after her birth.  She was born in Reading, Pennsylvania.  However, she grew up from early childhood into adulthood in the Dominican Republic.  Her mother remarried and her childhood in the Dominican Republic was normal.  Ms. Dominguez does not have any children.  She has never been married.

In 2009 the Defendant graduated from high school.  In 2013 she obtained a Bachelor's degree in Business Administration from "The Universidad Iberoamericana." In the summer of 2013, she also moved to Orlando, Florida from the Dominican

Republic and enrolled at Keller University in a Master's program seeking a degree in International Business.

In 2013 she met Martinez in Orlando, Florida. They became involved in a romantic relationship, Martinez was convicted separately for masterminding the relevant conspiracy. Martinez, who is four-teen (14) years older than the Defendant, was a controlling and authoritative figure. The Defendant, who lived with Martinez, at the time of the charged offense conduct, had no other family or friends in the area, and was dependent upon and controlled to a large degree by Martinez. Moreover, the initial romantic nature of the relationship became abusive. Initially, the Defendant had no knowledge that Martinez was involved in criminal activity. However, after moving in together she became aware that he was involved in criminal activity. The relationship had become toxic and abusive prior to Martinez arrest. [1]

Undersigned counsel submits that her actions at the time of the charged offense conduct should be viewed in the context of a manipulative and abusive relationship. Escalating threats of violence created an atmosphere where the Defendant was under tremendous stress at the time many of the relevant Apple store purchases. The Defendant was not under duress to the extent that it would be tantamount to a complete legal defense. However, the abusive nature of the relationship is a factor that the defense asserts should be considered for sentencing purposes. See 5K2.12 (a downward departure may be appropriate where a defendant committed an offense under coercion or duress, even under circumstances not amounting to a complete legal defense).

---

[1] See Attached – Exhibit A - Miami-Dade Police Report (Domestic Related Incident)

In April 2015 Martinez was arrested.  Several months after his arrest he was remanded to custody and the Defendant returned to the Dominican Republic to be with her family.

In May 2016 the Defendant sustained what is believed to have been a stroke. [2] The nature and extent of the stroke and the ultimate diagnosis of the stroke is something the Defendant continues to seek clarity about.  The existing medical diagnosis and long term treatment protocol remains unclear.  However, the symptomology of a serious medical problem continues to manifest itself.  Sudden and severe headaches, dizziness, possible seizures have all occurred over the last nine (9) months. When these events occur, she becomes completely disabled and requires immediate emergency medical attention.[3] The Defendant continues to undergo testing to determine whether these events are caused by a thrombosis/stroke event, severe high blood pressure, and/or chronic severe migraines headaches. She maintains a strict medication regimen in an attempt to control the onset of these events.

The Defendant has accepted responsibility in this case, sparing the Government and this Court the expense of prolonged litigation. She has also cooperated with the Government providing truthful and accurate information regarding her participation in the relevant criminal acts.

---

[2] See Attached – Exhibit B – Medical Records Dominican Republic 2016
[3] See Attached – Exhibit C – Medical Records Hospitalization in Pa. 2016

## 2.  The Need for the Sentence Imposed To Promote Certain Statutory Objectives

### (a) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

The offense that the Defendant is charged with is a very serious crime.  The Defendant understands that many people have been negatively impacted.  The Defendant has respect for the rule of law, the Court, and the Government.  The Defendant also acknowledges that her poor decision to participate in criminal activity, her toxic relationship with Martinez, and her existing medical situation have all triggered permanent life altering impacts.

In this case, the defense asserts that a felony conviction with extended supervision sufficiently reflects the seriousness of the offense taking into account the totality of circumstances.  Specifically, her involvement in relation to other co-conspirators and the nature of the manipulative and abusive domestic relationship she was in at the time of the incident.

The Defendant's lack of a criminal history and absence of any prior contacts with the criminal justice system supports a conclusion that such a proposed sentence would promote or maintain respect for the rule of law.

The defense asserts that a sentence that allows the Defendant to finish her education, obtain lawful employment, and manage her emotional and physical health would serve the ends of justice.  Imprisonment is not an appropriate means of promoting correction and rehabilitation. See 18 USC 3582(a)  In this case, rehabilitation and corrective behavior modification can be accomplished via a sentence that includes extended probation with intensive conditions of supervision.

8

**(b)to afford adequate deterrence to criminal conduct.**

The experience that the Defendant has gone through in this case, and the experiences she still has ahead of her, are a complete and total deterrence to any future criminal conduct.  The Defendant had no record of criminal conduct of any kind prior to this case. She has matured greatly since the age of 22, and has gained an understanding of the impact of her actions upon innocent parties. She has obtained further education and skills, as well as independence from bad influences and a re-engagement with her family support network. She has cut all ties with the persons with whom she was engaged in the criminal conduct. The Defendant looks forward to using her education and skills as a productive member of society, and is determined to put any involvement with criminal conduct out of her life, for good.

**(c) to protect the public from further crimes of the defendant.**

Defendant is fully aware of the harm she caused, and that her actions were wrong. There is no evidence that the public at large needs to be protected from the Defendant, now that she has accepted responsibility and disassociated herself from the persons who controlled and influenced her most in the last few years. The Defendant also has skills and education that will allow her to maintain lawful employment.

**(d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Defendant would benefit from domestic violence counseling.

### 3. The kinds of sentences available.

The Defendant can be sentenced up to a maximum term of fifteen (15) years in prison. Any prison term could be followed by up to six (6) years of supervised release.

Alternatively, the Court has the discretion to sentence the Defendant up to ten (10) years of probation. House arrest may also been an option for the Court for purposes of sentencing.

### 4. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Martinez, who organized and controlled the conspiracy, accepted responsibility for losses between $70,000 and $120,000. He was sentenced to thirty-three (33) months in prison, three (3) years of supervised release, and restitution (joint and several) in the amount of $96,406.76.

Kevin Mena, an Apple store employee who oversaw fraudulent sales with several other conspirators, was sentenced to twelve (12) months and one (1) day in prison, followed by three (3) years of supervised release, and restitution of $96,406.76.

Jeremy Bueno, another Apple store employee who engaged in fraudulent transactions with several conspirators, was sentenced to twelve (12) months and one day in prison, and restitution (joint and several) of $70,579.50.

The Defendant was a person that made purchases of Apple products with fraudulent credit cards. She did not have knowledge of the inner workings of the conspiracy. She was not a mastermind. Further, she has no criminal history unlike other similarly charged co-conspirators. The defense asserts that the Defendant should

be sentenced to less than the ringleader of the conspiracy and other employees that oversaw the operation of the conspiracy at the Apple stores. [4]

## 5.  The need to provide restitution to any victims of the offense.

Ms. Dominguez has agreed to pay $95,000 in restitution to Apple, Inc joint and severally with other co-defendants.  The Defendant intends to complete her education and work to satisfy her debt to society and the restitution owed to Apple Inc.

WHEREFORE, the Defendant, KARLA DOMINGUEZ, respectfully requests that this Honorable Court grant her a departure/variance from the Sentencing Guidelines.

Respectfully submitted,

s/ *Patrick Trese*
Patrick Trese
Florida Bar No. 0492426
Patrick Trese, P.A.
12 SE 7th Street, Suite 703
Fort Lauderdale, Florida 33301
Phone: 954-761-9166
Fax:    954-761-9149
Email:  **PatrickTreseLaw@Gmail.com**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing was furnished by the CM/ECF electronic system this 18th day of January, 2017 to the individuals on the attached Service List.

s/ *Patrick Trese*
Patrick Trese
Florida Bar No. 0492426

---

[4] See Attached – Exhibit D- Spreadsheet Referencing Co-conspirators and/or Similarly Situated Defendants- -. Offense Conduct- Sentences

## SERVICE LIST

Miesha Shonta Darrough, Esq.
U.S. Attorney's Office
99 N.E. 4th Street
Suite 623
Miami, Florida 33132
Tel: (305) 961-9368
Email: Miesha.Darrough@usdoj.gov

# "EXHIBIT A"

| AGENCY CODE | BAND RELATED | | CIRCLE ONE White Pink Blue Yellow | **NARRATIVE CONTINUATION** | | | Juvenile In Report | | 1. Original 2. Supplement | **2** |

| Date of Supplement 5/7/15 | | **MIAMI-DADE POLICE DEPARTMENT** | | Agency Report Number | **PD150428156550** |

| Original Date Reported 4/28/15 | Original Primary Offense Description **Grand Theft** | Victim #1 Name **Apple Corp.** | Original NCIC/UCR Code |
| Original OFF/INC Location | Primary Offense Changed To | A – Attempted C – Committed | New Statute Violation Number | New NCIC/UCR Code |

On 4/29/15, members of the Miami-Dade Police Dept. Economics Bureau executed a controlled delivery in the parking lot of the Burger King Restaurant located at 10 SW 8 St., which led to the apprehension of an individual named RAMON CONCEPCION.  At the direction of Det. M. Rodriguez; Sgt. L. Correa ID # (30-5725), Det. S. Monros ID # (30-7652) and myself, subsequently responded to a nearby apartment complex named, The Mint Condominiums, located at 92 SW 3 St. to confirm CONCEPCION's residence at that location.

Upon arrival, we first met with building security who confirmed CONCEPCION resided with his live in girlfriend Ms. Karla Dominguez in unit # 302.  Security confirmed last seeing CONCEPCION a few days earlier on 4/27/15 when he was involved in a heated verbal dispute with Dominguez.  According to security, Dominguez was found in the early morning hours hiding from CONCEPCION in the building's parking lot attempting to conceal herself behind a column.  Security officers later returned with her to the unit and made personal contact with Dominguez.

After knocking at the unit with no answer for several minutes, we again met with security personnel who allowed us to review the building CCTV for earlier in the day.  The footage revealed that at 1502 HRS just before the controlled delivery, CONCEPCION arrived at the building in the same Mercedes Benz SUV in which he was detained in. At our request, a phone call was placed by security to Dominguez informing her that the police were on scene requesting to speak with her.  Dominguez indicated she was less than ten minutes away and would be returning home to meet us.

After approximately forty five minutes we made contact with a female who was identified as Francheska Rosa-Valdez, that we observed attempting to enter the apartment with keys.  Rosa who identified herself as CONCEPCION's sister, stated she was visiting her brother from New York for a few days and was hoping to retrieve personal belongings from within the unit.  Rosa who admitted being in possession of Dominguez's set of keys, stated she had been calling Dominguez for several hours but her phone had been turned off.  At our request she repeatedly attempted to contact Dominguez from her phone at the same phone number Dominguez previously answered, but all calls went straight to voicemail.  At my request Rosa provided me with Dominguez's keys and the home was secured in

| Suspect Code S – Suspect   A – Arrestee | | Code # | Offense Indicator 1 #1   3 Both 2 #2 | Residence Type 1 City   3 Florida 2 County  4 Out of State | | Citizenship | | Drug Indication 1 Yes   8 Unknown 2 No | | Alcohol Indication 1 Yes   8 Unknown 2 No | |
| Drug Activity N N/A      S Sell P Possess   B Buy           T Traffic | | H Smuggle D Deliver E Use | K Dispense/ Distribute | M Manufacture/ Produce/ Cultivate | Z Other | | Drug Type N N/A           B Barbiturate A Amphetamine  C Cocaine E Heroin | H Hallucinogen M Marijuana O Opium/Dry | P Paraphernalia Q Equipment | S Synthetic | U Unknown Z Other |
| ☐ 1 Parent ☐ 2 Legal Guardian ☐ 3 Other | | Name of Parent or Custodian (Last, First, Middle) | | | | | | | Residence Phone | |
| Address (Street, Apt. Number) | | | (City) | | | (State) | | (Zip) | Business Phone | |
| Notified By: (Name) | | | Date | Time | | Juvenile Disposition 1. Handled/Processed Within Dept. and Released | | 2. Turned Over to DYS/CYF 3. Incarcerated (County Jail) | | |
| Released To: (Name) | | | | Relationship | | | | Date | Time | |

| Person/Unit Notified | | Time | | Related Report Number(s) | | | | | | |
| Officer (s) Reporting **A. Barazai** | | ID. Number | Routed To | Referred To | ID. Number(s)/Locator Code **4555/58** | | Unit **HQ5481** | | | Date |
| Officer Reviewing (If Applicable) **Sgt. L. Correa** | | **5725** | | | | Assigned To | | By | | Date |
| Case Status **CBA** | Clearance Type 1. Arrest        3. Unfounded 2. Exceptional  4. Open Pend. | **1** | A – Adult J – Juvenile | **A** | Date Cleared **4/29/15** | | Jail Number | | Page **1** of Page **2** |
| Exception Type 1. Extradition Declined | 2. Arrest on Primary Offense Secondary Offense Without Prosecution | 3. Death of Offender 4. V/W Refused to Cooperate | | 5. Prosecution Declined 6. Juvenile / No Custody | | OBTS Number | | | |

| | | CIRCLE ONE | **NARRATIVE CONTINUATION** | | Juvenile In Report | 1. Original 2. Supplement | **2** |
|---|---|---|---|---|---|---|---|

White  Pink  Blue  Yellow

| AGENCY CODE | GAME CARD | | | | | | |

| Date or Supplement | | | **MIAMI-DADE POLICE DEPARTMENT** | | Agency Report Number | **PD150428156550** | |
|---|---|---|---|---|---|---|---|
| 5/7/15 | | | | | | | |

| Original Date Reported | Original Primary Offense Description | | Victim #1 Name | | | Original NCIC/UCR Code |
|---|---|---|---|---|---|---|
| 4/28/15 | **Grand Theft** | | **Apple Corp.** | | | |

| Original OFF/NC Location | Primary Offense Changed To | | A - Attempted C - Committed | New Statute Violation Number | New NCIC/UCR Code |
|---|---|---|---|---|---|

hopes of obtaining a search warrant.  CONCEPCION's keys were also checked and revealed to unlock the unit.

Contact was then made with Miami-Dade Assistant State Attorney Michael Filteau who responded to the scene to assist in the procurement of the search warrant.  While preparing the affidavit in my vehicle, we were approached by Mr. Paul Petruzzi, who identified himself as CONCEPCION's attorney.  After advising him of the investigation, he stated that he believed Dominguez would be interested in responding to the scene to provide a consent to search of the residence.  Based solely on his efforts and direct conversations with Dominguez, she later responded to the scene and provided a written consent to search.

Prior to a physical search, MDPD Narcotics Bureau Canine Ofc. O. Sanchez ID # (30-4414) responded with his currency canine "Holly" and conducted a walk-through of the residence.  The dog positively alerted to the presence of currency within a stack of shoeboxes located in the main upstairs bedroom.

At the conclusion of the canine search a physical search was conducted while Dominguez remained on scene.  Among the notable items recovered the search yielded; $11,700 in US Currency, multiple I-Phone boxes, Apple desktop, Apple Macbook, Apple Store receipts, counterfeit credit cards, gift cards, $2,000 in Western Union Money Orders and other electronic devices typically sold at the Apple Store.  The items were seized and property receipts were provided to Dominguez.  During her review of the property receipts, she indicated she was not aware of the currency that was located within her bedroom and denied ownership.

**(\*NOTE\*) See Property Receipts**

**Case Disposition:  CBA**

| Suspect Code S - Suspect  A - Arrestee | | Code # | Offense Indicator 1 #1   3 Both 2 #2 | Residence Type 1 City      3 Florida 2 County  4 Out of State | | Citizenship | Drug Indication 1 Yes  8 Unknown 2 No | | Alcohol Indication 1 Yes  8 Unknown 2 No | |
|---|---|---|---|---|---|---|---|---|---|---|
| Drug Activity N N/A      S Sell P Possess  B Buy          T Traffic | | R Smuggle D Deliver E Use | K Dispense/ Distribute | M Manufacture/ Produce/ Cultivate | Z Other | | Drug Type N N/A A Amphetamine | B Barbiturate E Cocaine | H Hallucinogen M Marijuana | P Paraphernalia/ Equipment | U Unknown Z Other |
| | | | | | | | C Heroin | O Opium/Dry | S Synthetic | |
| ☐ 1 Parent ☐ 2 Legal Guardian ☐ 3 Other | Name of Parent or Custodian (Last, First, Middle) | | | | | | | | Residence Phone | |
| | Address (Street, Apt. Number) | | (City) | | | (State) | | (Zip) | Business Phone | |
| Notified By: (Name) | | | | Date | Time | | Juvenile Disposition 1. Handled/Processed Within Dept. and Released | | 2. Turned Over to DYS/CYF 3. Incarcerated (County Jail) | |
| Released To: (Name) | | | | Relationship | | | | Date | | Time |
| Person/Unit Notified | | Time | | Related Report Number(s) | | | | | | |
| Officer(s) Reporting A. Barazal | | | | ID. Number(s)/Locator Code 4555/58 | | | Unit HQ5481 | | | Date |
| Officer Reviewing (if Applicable) Sgt. L. Correa | | ID. Number 5725 | Routed To | Referred To | | Assigned To | | By | | Date |
| Case Status CBA | Clearance Type 1. Arrest       3. Unfounded 2. Exceptional  4. Open Pend. | 1 | A - Adult J - Juvenile | A | Date Cleared 4/29/15 | | Jail Number | | Page 2 | Page of 2 |
| Exception Type 1. Extradition Declined | 2. Arrest on Primary Offense Secondary Offense Without Prosecution | | 3. Death of Offender 4. VW Refused to Cooperate | | 5. Prosecution Declined 6. Juvenile / No Custody | | OBTS Number | | | |

32.02.00-2-1005- 7.0

**"EXHIBIT B"**

# Dr. Danny Mallol V.

**Clinica Unión Médica**

**Neurocirujano**
Post-Grado HRUUMCS

**Neuroendoscopía**
Centro Médico de Puerto Rico

Cel.: 809-702-7074
Consultorio: 809-226-8686
Ext.: 4210

Tela.: 809-581-4445
Ext.:_____
E-mail: mallol2210@hotmail.com

(1-2)

## INFORME MEDICO

Yo, **DR DANNY MALLOL V.** EX. CUATUM: 26-2000.
CONSTATO HABER EXAMINADO Y TRATADO A LA PACIENTE: ***KARLA MARI DOMINGUEZ ABREU. CED: 053-0044907-0.*** Por diagnostico de:

1. TROMBOSIS DEL SENO TRANSVERSO IZQUIERDO.
2. SINDROME DE HIPERTENCION ENDOCRANEAL SEVERO.

ESTA PACIENTE QUE REFIERE QUE DESDE HACIA 1 SEMANA APROXIMADAMENTE EN ESE TIEMPO PRESENTABA UN DOLOR DE CABEZA MOLESTOSO QUE NO MEJORABA CON EL USO DE ANALGESICO, PRESENTA EL 10 DE MAYO DEL 2016, MIENTRAS ESTABA TROTANDO DOLOR DE CABEZA INTENSO QUE LE HACE IR A LA EMERGENCIA PRESENTANDO CIFRAS TENSIONALES DE 150/100mmHG, FC:88 L/M    FR: 16 R/M   TEMP: 37C., SIENDO INGRESADA EN UN CENETRO DE SALUD EN SANTO DOMINGO, EN UNIDAD DE CUIDADOS INTESIVOS, EL 10 DE MAYO DEL 2016 POR 40 HORAS, LUEGO DE LO CUAL ES TRASNFERIDA A NOSOTROS EN NUESTRO CENTRO EL 13 DE MAYO DEL 2016. A SU LLEGADA EVALUAMOS A LA  PACIENTE QUEJANDOSE AUN DE CEFALEA INTENSA HOLOCRANEANA DE PREDOMINIO FRONTAL, OBNUBILADA Y CON EPISODIOS DE DESORIENTACION EN TIEMPO, ESPACIO Y PERSONA, SIN PARALISIS DE NERVIOS CRANEALES, CON MOBILIDAD DE CUATRO EXTREMIDADES, REFLEJO PUPILAR Y CORNEAL ADECUADO, FONDO DE OJO CON PAPILEDEMA. GLASGOW: 3-3-6=12/15PTOS.
NOS TRAEN LA TAC CRANEOENCEFALICA QUE MUESTRA UNA HEMORRAGIA SUBARACNOIDEA EN RELACION CON EL AREA DEL SENO VEMOSO IZQUIERDO.

EN ESTAS CONDICIONES ES INGRESADA EN UNIDAD DE CUIDADOS INTENSIVO, SE MANEJA DE INICIO LA HIPERTENSION ENDOCRANEAL FARMACOLOGICAMENTE Y LA PROGRAMAMOS PARA UNA ANGIOTOMOGRAFIA CEREBRAL, LA CUAL MUESTRA UNA AGENESIA DEL SENO TRANSVERSO IZQUIERDO, DEBIDO A UNA TROMBOSIS DEL SENO TRANSVERSO IZQUIERDO.

LUEGO DE ESTO SE INICIA MANEJO DE ANTICOAGULACION Y SE PIENZA EN EL MANEJO ANTITROBOTICO DE SER NECESARIO, PERO DEBIDO QUE LA PACIENTE EVOLUCIONA PROGRESIVAMENTE A LA MEJORIA, SE MANTIENE EL MANEJO ESTABLESIDO Y SE LE REALIZA A LAS 72 HORAS UNA ANGIORESONANCIA CEREBRAL EN LA CUAL CONFIRMAMOS EL DIAGNOSTICO, POR LO QUE MANTUBIMOS EL MANEJO INICIAL.

ESTA PACIENTE A SU EGRESO EL 20 DE MAYO SE OBSERVA, ALERTA, AUN QUEJANDOSE DE MAREOS OCASIONALES Y CEFALEAS DE MUY BAJA INTENSIDAD, PERO ALERTA, SIN PARALISIS DE NERVIOS CRANEALES, MOVILIDAD DE 4 EXTREMIDADES, REFIRIENDO

## Dr. Danny Mallol V.

**Clínica Unión Médica**

**Neurocirujano**
Post-Grado HRUJMCS

**Neuroendoscopía**
Centro Médico de Puerto Rico

Cel.: 809-702-7074
Consultorio: 809-226-8686
Ext.: 4210

Tels.: 809-581-4445
Ext.: _____
E-mail: mallol2210@hotmail.com

(2-2)

AUN DISESTESIA DEL HEMICUERPO DERECHO, PERO YA ALERTA, CON GLASGOW: 4-5-6=15 PTOS.

DADO EN SANTIAGO DE LOS CABALLEROS EL 16 DE NOVIEMBRE DEL 2016.

DR. DANNY MALLOL V.
NEUROCIRUJANO

1 of 1

SKMBT_C45016111615480.pdf

*Dr. Danny Mallol V.*

Clínica Unión Médica
Neurocirujano
PostGrado Holanda
Neuroendoscopía
Centro Médico Cía Puerto Rico

Cel.: 809-702-7074
Consultorio: 809-226-8686
Ext.: 4310

Tels.: 809-681-4448
Ext.:
E-mail: mallol2210@hotmail.com

[2-2]

AUN DISESTESIA DEL HEMICUERPO DERECHO, PERO YA ALERTA, CON GLASCOW: 4-5-6=15 PTOS.

DADO EN SANTIAGO DE LOS CABALLEROS EL 16 DE NOVIEMBRE DEL 2016.

DR. DANNY MALLOL V.
NEUROCIRUJANO

*Dr. Danny Mallol V.*
Exeq. 26-2003
03RD 105-05

Page 1 / 1

11/18/2016 12:16 PM

*Dr. Danny Mallol V.*

**Clínica Unión Médica**

**Neurocirujano**
Post-Grado NRU-MCB

**Neuroendoscopia**
Centro Médico Co Puerto Rico

Cel.: 809-702-7074
Consultorio: 809-226-8688
Ext.: 4210

Tels.: 809-581-4448
Ext.: _____
E-mail: mallol2210@hotmail.com

(2-2)

AUN DISESTESIA DEL HEMICUERPO DERECHO, PERO YA ALERTA, CON GLASGOW: 4-5-6=15 PTOS.

DADO EN SANTIAGO DE LOS CABALLEROS EL 16 DE NOVIEMBRE DEL 2016.

DR. DANNY MALLOL V.
NEUROCIRUJANO

Dr. Danny Mallol V.
Exeq. 28-2000
CONED 105-26

*Dr. Danny Mallol V.*

**Clínica Unión Médica**

**Neurocirujano**
Post-Grado HRUMCS

**Neuroendoscopía**
Centro Médico de Puerto Rico

Cel.: 809-702-7074
Consultorio: 809-226-8688
Ext.: 4210

Tels.: 809-681-4445
Ext.:
E-mail: mallol2210@hotmail.com

(2-2)

AUN DISESTESIA DEL HEMICUERPO DERECHO, PERO YA ALERTA, CON GLASGOW: 4-5-6=15 PTOS.

DADO EN SANTIAGO DE LOS CABALLEROS EL 16 DE NOVIEMBRE DEL 2016.

DR. DANNY MALLOL V.
NEUROCIRUJANO

Dr. Danny Mallol V.
Exeq. 26-2000
CONCO 105-26

**"EXHIBIT C"**



HIM HEALTH INFO MGMT
420 S Fifth Ave
West Reading PA 19611
Inpatient Record

READING HEALTH
S Y S T E M

DOMINGUEZ, KARLA
MRN: 3146963
DOB: 1/25/1992, Sex: F
Acct #: 100007999586
Adm: 9/30/2016, D/C: 10/2/2016

## Events (continued)

| Date/Time | Event | Pt Class | Unit | Room/Bed | Service |
|---|---|---|---|---|---|
| 10/02/16 1535 | Discharge | Observation | RH E18U | E123/01 | Observation Hospital |

## ED Events

| Date/Time | Event | User | Comments |
|---|---|---|---|
| 09/30/16 2344 | Patient arrived in ED | SCHLAPPICH, COURTNEY T | |
| 09/30/16 2345 | Patient roomed in ED | SCHLAPPICH, COURTNEY T | To room D01 |
| 09/30/16 2346 | Assign Nurse | BECK, KAILEY J | Kailey J Beck, RN assigned as Registered Nurse |
| 10/01/16 0023 | Assign Attending | BAILEY, BLAKE C | Blake C Bailey, MD assigned as Attending |
| 10/01/16 0137 | Admit/Obs Disposition Selected | BAILEY, BLAKE C | ED Disposition set to Transfer to Inpatient |
| 10/01/16 0202 | Assign Attending | YOUNG, JESSICA L | YOUNG, J assigned as Attending Provider |
| 10/01/16 0415 | Remove Nurse | BECK, KAILEY J | Kailey J Beck, RN removed as Registered Nurse |
| 10/01/16 0415 | Patient transfer | BECK, KAILEY J | From room D01 to room OTF, Pool Room |
| 10/01/16 0422 | Patient admitted | MELLEY, HEATHER A | |
| 10/01/16 0422 | Patient departed from ED | MELLEY, HEATHER A | |

## Allergies as of 10/2/2016

Viewed Only On: 10/1/2016 By: Michelle A Reinert, RT

No Known Allergies

## Home Medications

| Med List Status: MCT-Complete | | | Jenel N Peterson, Med Collection Technician | | 10/01/2016 1:46 AM |
|---|---|---|---|---|---|
| | | Last Dose | Start Date | End Date | Provider |
| warfarin (COUMADIN) 5 MG tablet | | 9/30/2016 | — | 10/02/16 | Historical Provider, MD |

## Medical History

| Medical as of 10/2/2016 | Past Medical History | Date | Comments | Source |
|---|---|---|---|---|
| | Migraine | | | Provider |
| | Protein C deficiency | | | Provider |
| | Protein S deficiency | | | Provider |
| | Stroke | | | Provider |

## Problem List as of 10/2/2016

Reviewed: 10/1/2016 2:25 AM by Jessica L Young, DO

| | Codes | Priority | Class | Noted - Resolved |
|---|---|---|---|---|
| * (Principal)Stroke-like symptoms | ICD-10-CM: R29.90 | | | 10/1/2016 - Present |
| | ICD-9-CM: 781.99 | | | Entered by Jessica L Young, DO |
| Protein C deficiency | ICD-10-CM: D68.59 | | | 10/1/2016 - Present |
| | ICD-9-CM: 289.81 | | | Entered by Jessica L Young, DO |
| History of CVA with residual deficit (Chronic) | ICD-10-CM: I69.30 | | | 10/1/2016 - Present |
| | ICD-9-CM: 438.0 | | | Entered by Jessica L Young, DO |

Overview Signed 10/1/2016 2:28 AM by Jessica L Young, DO

L sided weakness
5/2016 diagnosed and treated in Dominican Republic

| Protein S deficiency (Chronic) | ICD-10-CM: D68.59 | | | 10/1/2016 - Present |
|---|---|---|---|---|
| | ICD-9-CM: 289.81 | | | Entered by Jessica L Young, DO |
| Anticoagulated on Coumadin (Chronic) | ICD-10-CM: Z51.81, Z79.01 | | | 10/1/2016 - Present |
| | ICD-9-CM: V58.83, V58.61 | | | Entered by Jessica L Young, DO |
| Subtherapeutic international normalized ratio (INR) | ICD-10-CM: R79.1 | | | 10/1/2016 - Present |
| | ICD-9-CM: 790.92 | | | Entered by Jessica L Young, DO |
| History of migraine headache (Chronic) | ICD-10-CM: Z86.69 | | | 10/1/2016 - Present |



**READING HEALTH**
S Y S T E M

HIM HEALTH INFO MGMT
420 S Fifth Ave
West Reading PA 19611
RediscIosure Statement

DOMINGUEZ, KARLA
MRN: 3146963
DOB: 1/25/1992, Sex: F

## Patient Demographics

| Patient Name | Sex | DOB | Service Area | Address | Phone |
|---|---|---|---|---|---|
| Dominguez, Karla | F | 1/25/1992 | RHS SERVICE AREA | 14 Croydon Tarrace READING PA 19601 | 305-849-0356 (Home) 305-849-0356 (Mobile) *Preferred* |

## Admission Information - Patient Record Only

| | | | | |
|---|---|---|---|---|
| Arrival Date/Time: | 09/30/2016 2344 | Admit Date/Time: | 09/30/2016 2345 | IP Adm. Date/Time: |
| Admission Type: | Emergency | Point of Orgin: | Home Or Work Place | Admit Category: |
| Means of Arrival: | Reading Fire 600-4 | Primary Service: | Observation Hospital | Secondary Service: N/A |
| Transfer Source: | | Service Area: | Rhs Service Area | Unit: Rh E1su |
| Admit Provider: | Jessica L Young, DO | Attending Provider: | Blake C Bailey, IMD | Referring Provider: Jessica L Young, DO |

## Patient Ethnicity & Race

| Ethnic Group | Patient Race |
|---|---|
| Hispanic or Latino | White or Caucasian |

## Insurance as of 10/2/2016

| Payor | Plan | Group | Member | Effective Dates |
|---|---|---|---|---|
| MEDICAID - PENNSYLVANIA ACCESS CARD | MEDICAID-PENNSYLVANIA ACCESS CARD [25301] | | 3912482116 | 9/30/2016 - |

Subscriber: DOMINGUEZ, KARLA [3912482116]
Guarantor: DOMINGUEZ, KARLA

## Discharge Information - Hospital Account/Patient Record

| Discharge Date/Time | Discharge Disposition | Discharge Destination | Discharge Provider | Unit |
|---|---|---|---|---|
| 10/02/2016 1535 | Home Or Self Care | Home | Jessica L Young, DO | Rh E1su |

## Account Information

| Hospital Account | Primary Payor | Affiliated Recurring Accounts | | Combined from HAR |
|---|---|---|---|---|
| 100007899586 - DOMINGUEZ, KARLA | MEDICAID - PENNSYLVANIA ACCESS CARD [263] | None | | None |

## Admission Diagnoses / Reasons for Visit (ICD-10-CM)

| Code | Description | Comments |
|---|---|---|
| M62.81 | Muscle weakness (generalized) | |

## Final Diagnoses (ICD-10-CM)

| Code | Description | POA | CC | HAC | Affects DRG |
|---|---|---|---|---|---|
| M62.81 [Principal] | Muscle weakness (generalized) | | | | |
| G43.909 | Migraine, unspecified, not intractable, without status migrainosus | | | | |
| Z86.73 | Personal history of transient ischemic attack (TIA), and cerebral infarction without residual deficits | | | | |
| D68.59 | Other primary thrombophilia | | | | |
| Z87.891 | Personal history of nicotine dependence | | | | |
| Z79.01 | Long term (current) use of anticoagulants | | | | |

## CPT®/HCPCS Codes

| Diagnosis Info | Combined? | POA? |
|---|---|---|
| Muscle weakness (generalized) [680013] | | |
| Migraine, unspecified, not intractable, without status migrainosus [716666] | | |
| Personal history of transien Ischemic attack (TIA), and cerebral infarction without residual deficits [716699] | | |
| Other primary thrombophilia [715026] | | |
| Personal history of nicotine dependence [711206] | | |
| Long term (current) use of anticoagulants [717566] | | |

## Events

| Date/Time | Event | Pt Class | Unit | Room/Bed | Service |
|---|---|---|---|---|---|
| 09/30/16 2344 | ED Arrival | | RH EMERGENCY | | |
| 09/30/16 2345 | ED Roomed | | RH EMERGENCY | | |
| 10/01/16 0415 | ED Transfer | | RH EMERGENCY | | |
| 10/01/16 0422 | Admit from ED | | RH E1SU | | |
| 10/01/16 0531 | Transfer Out | Observation | RH E1SU | E123/02 | Observation Hospital |
| 10/01/16 0531 | Transfer In | Observation | RH E1SU | E123/01 | Observation Hospital |

Generated on 1/12/2017  5:32 PM

P0005    ECIVRESITLUM L & A    108E8437184 XAF MA8E:11 7102/71/10    ⓟ0001/0005

# "EXHIBIT D"

| Defendant | Charges Pled To | Offense Conduct | Sentence |
|---|---|---|---|
| Jeremy Bueno | Conspiracy to Commit Access Device Fraud Aggravated Identity Theft | Apple Store Employee: Oversaw Fraud. Activity in the store. Dealt with Martinez and "mules" | 12 Month and 1 Day Imprisonment 3 Years Supervised Release |
| Rodolfo Martinez | Conspiracy to Commit Access Device Fraud Trafficking in Counterfeit Access Devices Use of Unauthorized Access Devices | Lead Conspirator: Admitted to Soliciting People to Steal Personal Identifying Information, Making Fraud. Credit Cards, Soliciting Apple Store Employees, Soliciting "Mules" to make purchases, and Provided other individuals with information how to conduct this sort of criminal enterprise (e.g. Pratz) | 33 Months Imprisonment 3 Years Supervised Release |
| Kevin Mena | Conspiracy to Commit Access Device Fraud Use of Unauthorized Access Devices | Apple Store Employee: Oversaw Fraud. Activity in the store. Dealt with | 12 Months and 1 day Imprisonment 3 Years Supervised Release |

| | | Martinez and "mules" | |
|---|---|---|---|
| Rafael Prats | Conspiracy to Commit Access Device Fraud, Aggravated Identity Theft | Lead Conspirator: Admitted to Soliciting People to Steal Personal Identifying Information, Making Fraud. Credit Cards, Soliciting Apple Store Employees, Soliciting "Mules" to make purchases. 16-20208-CR-Moreno | 44 Months Imprisonment 3 Years Supervised Release |
| Karla Dominguez | Conspiracy to Commit Access Device Fraud, Trafficking in Counterfeit Access Devices | Made purchases on or about nine or more occasions with fraudulent credit cards of Apple products | |